IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEW WEST, et al. | ) | |
| | ) | 05 C 1743 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF JOLIET, et al. | ) | Hon. Charles R. Norgle |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| THERESA DAVIS, et al. | ) | |
| | ) | 07 C 7214 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF JOLIET, et al. | ) | Hon. Charles R. Norgle |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 11 C 5305 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF JOLIET, et al. | ) | Hon. Charles R. Norgle |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the court are three motions by the City of Joliet ("Joliet") to stay suits by plaintiffs in three separate but related civil rights suits which spring from a contested condemnation action. For the following reasons, Joliet's motions to stay are granted.

The three civil rights suits are stayed pending the completion of a bench trial in the condemnation case.

## I. BACKGROUND

The factual background of these cases is well documented in previous opinions by this court and by the Seventh Circuit.[1] This court has issued a separate opinion and order granting in part and denying in part Joliet's motions to dismiss. This opinion and order concerns whether the plaintiffs' Seventh Amendment right to a jury trial in their civil rights suits would be violated by first conducting a bench trial in the condemnation action. In 2007, with just New West's civil rights suit facing Joliet as it pressed its condemnation case, the Seventh Circuit instructed: "The district court's first order of business on remand should be to resolve the condemnation action. If Joliet prevails, that would knock out many of the theories on which New West relies in this suit . . . ." New West, L.P. v. City of Joliet, 491 F.3d 717, 721 (7th Cir. 2007). By 2009, there were two civil rights lawsuits facing Joliet, one by New West, another by tenants of Evergreen Terrace ("Tenants").[2] The Seventh Circuit reiterated instructions to resolve the condemnation action first, City of Joliet v. New West, L.P., 562 F.3d 830, 832 (7th Cir. 2009), adding: "This eminent domain proceeding has been stalled since its institution

---

[1] See City of Joliet v. New West, L.P., 562 F.3d 830 (7th Cir. 2009); New West, L.P. v. City of Joliet, 491 F.3d 717 (7th Cir. 2007); City of Joliet v. Mid-City Nat'l Bank of Chi., No. 05 C 6746, 2008 WL 4344896 (N.D. Ill. Mar. 27, 2008); City of Joliet v. Mid-City Nat'l Bank of Chi., No. 05 C 6746, 2007 WL 2298403 (N.D. Ill. Aug. 03, 2007).

[2] Two of the lawsuits, by the Tenants and by the government, were filed after the condemnation case. One, by New West, predated the formal initiation of condemnation proceedings. All three make basically the same factual claims of discrimination. Further, along with the city, Joliet's mayor, former mayor, city manager, former city manager, and deputy city manager are also sued officially and individually. This opinion refers to them collectively as "Joliet." New West and New Bluff, both Illinois limited partnerships, each own a phase of the two-phase Evergreen Terrace complex. This opinion refers to them collectively as "New West." The United States Department of Housing and Urban Development is the condemnation defendant and the United States is the civil rights plaintiff. This opinion refers to them as "the government" or "United States."

more than three years ago. We trust that the district court will now bring it to a speedy conclusion," id. at 839.

Three more years have passed. This court called for briefing on the issue of whether the four suits, already consolidated for discovery, should be consolidated for trial. The plaintiffs favor consolidating all four suits for trial.[3] They contend a bench trial in the condemnation action would foreclose their Seventh Amendment right to a jury trial because their condemnation action defenses—such as alleged Fair Housing Act ("FHA") violations—mirror their FHA claims for damages in the civil rights cases. Joliet opposes consolidation for trial. New West and the Tenants have found occasion to argue the Seventh Amendment issue in other briefing, including Joliet's latest motions to dismiss. The court has considered these arguments and the Seventh Circuit's repeated instructions. The court notes at the outset that a Seventh Amendment question was never before the Seventh Circuit in this case. But it is noteworthy that the panel in both decisions discussed the presence of the multiple lawsuits when issuing the directive to resolve the condemnation action first, recognizing that doing so may preclude issues in the related civil rights cases.

## II. DISCUSSION

### A. Standard of Decision

"The right to a jury trial in federal court hinges on federal procedural law." Dexia Credit Local v. Rogan, 629 F.3d 612, 625 (7th Cir. 2010) (citing Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc., 356 F.3d 731, 735 (7th Cir. 2004)). Federal Rule of Civil Procedure 38(a) preserves to parties the right of a trial by jury as declared by the Seventh

---

[3] While the government asserts a jury right exists on the issues in the affirmative defenses in the condemnation case, it does not develop the argument. In contrast, New West and the Tenants argue at length that a jury trial right exists on those issues.

Amendment to the Constitution or as otherwise provided by federal statute. The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. To determine if a case would resolve legal rights and give rise to a jury trial right, the court examines both the nature of the claim for relief and the remedy sought. Dexia Credit Local, 629 F.3d at 625 (citing Marseilles Hydro Power, LLC v. Marseilles Land & Water Co., 299 F.3d 643, 648 (7th Cir. 2002)). This analysis requires the court to "compare the . . . action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity . . . [and] the remedy sought and determine whether it is legal or equitable in nature." Tull v. United States, 481 U.S. 412, 417-18 (1987). "The abstruse historical search for the nearest 18th-century analog is less important than determining whether the remedy sought is equitable or legal in nature." Dexia Credit Local, 629 F.3d at 625 (internal citations and quotations omitted) (citing Tull, 481 U.S. at 421; Granfinanciera S.A. v. Nordberg, 492 U.S. 33, 42 (1989); Marseilles, 299 F.3d at 648).

"Legal remedies traditionally involve money damages, while equitable remedies are typically coercive and enforceable directly on the persons or things to which they are directed." Dexia Credit Local, 629 F.3d at 625 (citing Int'l Fin., 356 F.3d at 736). "A suit seeking only equitable relief is not a suit at common law, regardless of the nature of the issues likely or even certain to arise in the case." Id. (quotations omitted). But when both legal and equitable claims are present in the same suit, the jury right prevails. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-11 (1959) (holding that a jury right attached to an initially equitable case when the legal issue arose later in a counterclaim); see also Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472-73 (1962) (reaffirming that

4

"where both legal and equitable issues are presented in a single case" a Seventh Amendment jury right exists); Ross v. Bernhardt, 396 U.S. 531, 538 (1970) ("The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action.").

### B. Motion to Stay and Jury Trial Right

Joliet argues the three civil rights suits should be stayed because they are duplicative of defenses in the condemnation case or, alternatively, because there is no case or controversy. The argument to stay for lack of a case or controversy is frivolous: without a case or controversy this court lacks jurisdiction and there is nothing to stay. The argument to stay on grounds of duplicative litigation is also off the mark, but Joliet manages to invoke the Seventh Circuit's directive to take the condemnation proceeding first. "That the condemnation action is pending in federal court suggests that it is imprudent to resolve the current suit until the condemnation proceeding has been finally resolved; why deal with a defense independent of the action to which it pertains?" New West, 491 F.3d at 720. Although this court is obliged to follow the instructions of the Seventh Circuit in this case, in the past three years parties and paper have intervened. Moreover, the panel never got a chance to consider the Seventh Amendment issue. This court therefore will follow the panel's instructions to the extent they are consistent with the Seventh Amendment rights of the plaintiffs.

#### 1. Whether Beacon Theatres v. Westover and Its Progeny Control

There is no dispute that the nature of the plaintiffs' claims is legal, and that the civil rights cases, standing alone, would have jury trials while the condemnation case, standing alone, would not. The traditional two-step Seventh Amendment inquiry is unnecessary. Rather, the Tenants and New West raise the issue controlled by Beacon

Theatres and Dairy Queen. The plaintiffs point out that equitable defenses in the condemnation action are for the most part identical to the legal claims in the civil rights suits. As a result, preclusion of legal issues seems inevitable if the condemnation proceeds separately with a bench trial, depriving the plaintiffs of a jury determination. See, e.g., Mann v. Brenner, 375 F. App'x 232, 237-38 (3d Cir. 2010) (applying collateral estoppel where the "record makes clear that the identical issue [the landowner] seeks to raise [in a § 1983 action]... was actually litigated in the state condemnation proceeding").[4] The plaintiffs argue that because both legal and equitable claims are present among the four cases, Beacon Theatres and Dairy Queen require a jury trial on all legal issues located among the four cases—in particular, the affirmative defenses in the condemnation case that involve the same issues and facts as the legal claims in the civil rights suits.

Plaintiffs overlook the fact that this doctrine applies when the legal and equitable claims are present *in the same action*. Beacon Theatres, 359 U.S. at 510 (applying to "joinder in *one suit* of legal and equitable causes"); Dairy Queen, 369 U.S. at 472 (applying "where both legal and equitable issues are presented *in a single case*"); Ross, 396 U.S. at 537-38 (applying "where equitable and legal claims are joined in *the same action*"); see also Curtis v. Loether, 415 U.S. 189, 195 (1974) (applying to "*an ordinary civil action*") (all emphases added). Plaintiffs filed no counterclaims in the condemnation action. Indeed, the prevailing view bars counterclaims in condemnation suits. See Fed. R. Civ. P. 71.1(e) (expressly allowing defenses and objections in answer); United States v. 191.07 Acres of Land, 482 F.3d 1132, 1140 (9th Cir. 2007) ("A property owner cannot file a counterclaim in a direct condemnation action."); United States v. Certain Land

---

[4] The court is not actually deciding the issue of preclusion. Rather, the court assumes *arguendo* preclusion would apply to certain of the civil rights claims.

6

Situated in City of Detroit, 361 F.3d 305, 308 (6th Cir. 2004) (permitting no counterclaim in direct taking); United States v. Banisadr Bldg. Joint Venture, 65 F.3d 374, 380 (4th Cir. 1995) (noting that "a counterclaim, which would otherwise seem to be an appropriate vehicle for raising a claim" in condemnation action must be filed in a separate action) (internal quotations omitted); see also 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3048 (2d ed. 2011) (observing that under Rule 71.1 a "counterclaim may not be raised in the answer," because the answer's only function "is to contest the right of the government to take the land"). Moreover, the Supreme Court has explained the process and equitable nature of a challenge to a condemnation action:

> [W]hen the government initiates formal condemnation procedures, a landowner may question whether the proposed taking is for public use. The landowner who raises this issue, however, seeks not to establish the government's liability for damages, but to prevent the government from taking his property at all. . . . *[T]he relief desired by a landowner making this contention is analogous not to damages but to an injunction; it should be no surprise, then, that the landowner is not entitled to a jury trial* on his entitlement to a remedy that sounds not in law but in equity.

City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 713 (1999) (emphasis added); see also United States v. Reynolds, 397 U.S. 14, 20 (1970) ("[A] jury in federal condemnation proceedings is to be confined to the performance of a single narrow but important function—the determination of a compensation award . . . ."). Because legal and equitable claims are not present in the condemnation action, Beacon Theatres and its progeny do not mandate a jury trial.

### 2. Whether Preclusion Violates the Seventh Amendment

Rather than counterclaims the plaintiffs raise affirmative defenses to the condemnation, including alleged FHA violations. These equitable issues would be presented in a "public use" phase of the condemnation trial, ordinarily tried to the bench. See Del Monte Dunes, 526 U.S. at 713. The FHA claims for legal relief, overlapping or

7

completely mirroring the equitable FHA defenses, are found only in the civil rights actions. New West and the Tenants argue that preclusion of legal claims by resolution of equitable claims tried to the bench in the condemnation action would violate the Seventh Amendment. The Supreme Court has rejected this argument. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 335-36 (1979) (holding that an adverse factual adjudication in a bench trial may preclude the same issues in a subsequent legal action where "there is no further factfinding function for the jury to perform, since the common factual issues have been resolved in the previous action"); Ross-Berger Cos., Inc. v. Equitable Life Assur. Soc. of the U.S., 872 F.2d 1331, 1334 (7th Cir. 1989); Hussein v. Oshkosh Motor Truck Co., 816 F.2d 348, 355 (7th Cir. 1987). Preclusion therefore does not affect whether the plaintiffs have a Seventh Amendment jury right.

### 3. Whether a Jury Trial May Arise Through Consolidation

There is no dispute that there are four separate cases before the court. Nor is there any dispute that in the civil rights suits the plaintiffs' FHA claims for damages carry a jury right. Curtis, 415 U.S. at 192; see also United States v. Balistrieri, 981 F.2d 916, 927 (7th Cir. 1992). But there is no Seventh Amendment jury right in the fourth case—the condemnation action. "For it has long been settled that there is no constitutional right to a jury in eminent domain proceedings." Reynolds, 397 U.S. at 18 (citing Bauman v. Ross, 167 U.S. 548, 593 (1897)); see also Atlas Roofing, 430 U.S. 442, 458 (1977) ("Condemnation was a suit at commonlaw but constitutionally could be tried without a jury."); N. Border Pipeline Co. v. 64.111 Acres of Land, 344 F.3d 693, 694-95 (7th Cir. 2003) ("[T]he Supreme Court held long ago that condemnation actions filed by the United States and its instrumentalities are not 'at common law' because the obligation to pay is undisputed, and only valuation is required."); United States v. Certain Land

Situated, 450 F.3d 205, 208 (6th Cir. 2006) (discussing Reynolds); United States v. Keller, 142 F.3d 718, 720 (4th Cir. 1998) (same).

Although this case was removed, the parties did not address whether Illinois law grants a jury trial in the public use phase. State law may provide a jury right in a condemnation action brought under state power of eminent domain. See Fed. R. Civ. P. 71.1(k) ("[I]f state law provides for trying an issue by jury—or for trying the issue of compensation by jury or commission or both—that law governs."). Illinois law provides no such right. Ill. Const. 1970 art. I, § 15 (jury right as to compensation); 735 ILCS 30/10-5-5 (on demand, jury sets compensation); Ill. State Toll Highway Auth. v. Am. Nat'l Bank & Trust Co. of Chi., 642 N.E.2d 1249, 1254 (Ill. 1994) (jury only sets compensation); St. Clair Cnty. Hous. Auth. v. Quinn, 39 N.E.2d 363, 365 (Ill. 1942) ("The jury in a condemnation suit is called only for the purpose of finding values and fixing damages."). The result is therefore the same. See Rule 71.1(k) ("This rule [otherwise] governs an action involving eminent domain under state law.").

Because the Seventh Amendment does not apply, courts resolving condemnation actions look to the Federal Rules. See Reynolds, 397 U.S. at 19. "In an action involving eminent domain under federal law, the court tries all issues, including compensation, except when compensation must be determined . . . by a jury when a party demands one . . . ." Fed. R. Civ. P. 71.1(h). The Rule requires a judge to try issues that contest the purpose of the condemnation. See Reynolds, 397 U.S. at 19 ("The Rule thus provides that, except for the single issue of just compensation, the trial judge is to decide all issues, legal and factual, that may be presented."); Garvie v. City of Ft. Walton Beach, 366 F.3d 1186, 1190 (11th Cir. 2004) ("[J]udges must decide as a matter of law whether the asserted purpose behind a taking constitutes a 'public use' . . . .").

9

The four parties agreed to the routine practice of Rule 42 consolidation for discovery. See Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 839 (7th Cir. 1999) ("By far the best means of avoiding wasteful overlap when related suits are pending in the same court is to consolidate all before a single judge."). Now, however, the plaintiffs seek to consolidate all four cases for trial. The plaintiffs do not argue that by treating the cases as a single unit that a jury right may thereby attach. Instead, they argue that because a jury right already exists the court must join the cases for trial. In a footnote in its brief, the government asserts that a jury trial attaches to the affirmative defenses in the condemnation case, but cites only Curtis, 415 U.S. at 192 (jury right attaches to FHA claim for damages), which does not control this issue. United States' & Federal Defendant's Mem. in Resp. to the Court's Order of July 15, 2011, at 3 n.3.

Consolidation of the cases may implicate the availability of a jury trial. Beacon Theatres involved a Rule 13 counterclaim and Dairy Queen involved Rule 18 joinder. Each was a single lawsuit. The traditional rule is that consolidation under Rule 42, however, does not create a single lawsuit for jury trial purposes. Newfound Mgmt. Corp. v. Lewis, 131 F.3d 108, 114-18 (3d Cir. 1997) (citing Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933) ("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties . . . .")). Although Johnson remains the "authoritative" view, 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2382 (3d ed. 2011), the question is not settled.

In the relatively few reported cases concerning this issue, district courts may have discretion under Rule 42 to order a jury trial on all issues. See Newfound Mgmt. Corp., 131 F.3d at 116-18 (discussing cases from the Third and Ninth Circuits). In Newfound,

the district court consolidated an equitable quiet title action with a legal action for trespass. Id. at 109. The quiet title action was filed four years before the trespass case and did not involve identical issues. Id. at 117. The district court held a bench trial on common issues, making findings preclusive of the legal trespass claim. Id. at 118. Applying a case-by-case approach, the Third Circuit affirmed and found no jury right attached to the legal action after consolidation, but suggested the case was an exception. Id. at 118. "Beacon Theatres does not apply in these consolidated cases where the equitable action was filed long before the legal one, the trial was a continuation of the equity matter, the overlap of factual matters was not extensive, and inordinate delay had prevented timely completion of the equity case." Id.

Newfound distinguished Blake v. Farrell Lines, Inc., 417 F.2d 264 (3d Cir. 1969), and United States v. Nordbrock, 941 F.2d 947 (9th Cir. 1991). In Blake, a personal injury claim for damages was filed first and an indemnity claim soon after, both stemming from a stevedore's injury at sea. 417 F.2d at 265. The shipowner moved for consolidation under Rule 42 demanding a bench trial. Id. The district judge consolidated the cases but ordered a jury trial instead. Id. Without discussing Beacon Theatres, the court affirmed, reasoning that "in special situations of trial consolidation and closely related actions or claims, one attended by a right to jury trial and the other not, a court may, in the interest of efficient and expeditious administration of justice, require that both be submitted to a jury for decision upon the factual issues." Id. at 266. In affirming, the court also "recognize[d] the exercise of judicial power to order a consolidated jury trial of both proceedings as a proper means of fully effectuating the justifying purposes of Rule 42(a) consolidation." Id. at 267.

In Nordbrock, the Internal Revenue Service brought an equitable claim and obtained a judgment which the tax defendant paid in part. 941 F.2d at 948. The tax defendant filed a separate lawsuit seeking a refund. Id. at 948-49. The judge in the IRS case made factual determinations, on a which a different judge in the refund case relied and applied res judicata to resolve in favor of the IRS. Id. at 949. Appealing summary judgment, the tax defendant won a remand for a determination of a narrow fact material to both cases. Id. On remand, the cases were consolidated and a district judge held a bench trial. Id. The tax defendant lost again and appealed on Seventh Amendment grounds. Id. The court affirmed without discussing Beacon Theatres or whether Rule 42 created a single action for jury trial purposes. Id.

These cases do not provide clear guidance. Newfound affirmed what is apparently the traditional rule that Rule 42 consolidation does not trigger new jury rights, even after Beacon Theatres, while recognizing that discretion to order a jury trial may in some cases be proper. Blake affirmed a district court's discretion to order a jury trial in order to promote efficient administration of justice pursuant to Rule 42, but without mentioning Beacon Theatres. Nordbrock did not discuss Beacon Theatres, did not discuss Rule 42, and did not discuss a district court's discretion to order a jury. The court finds Nordbrock unpersuasive. In contrast, Newfound suggests a rule that where an equitable claim is filed well before and essentially independent of a later legal action, consolidation does not create a single case for jury trial purposes under Beacon Theatres. Though with the opposite result, Blake suggests an application of Newfound such that where equitable and legal cases are filed close in time concerning identical events or issues, a judge may order a jury trial if doing so promotes the goals of Rule 42.

Both Newfound and Blake stressed the chronology and topical relatedness of the actions. Unlike Newfound, New West's civil rights lawsuit was filed first and directly contemplated the equitable condemnation claim Joliet filed soon after. The next two legal claims, by the Tenants and the government, were filed at increasing removes but directly concerned the condemnation action. Under a narrow reading of Newfound and Blake, a jury trial may be proper here, though a jury would not be required. Neither Newfound or Blake, however, confronted a scenario of clashing Federal Rules. If this court were to order a jury trial in the condemnation action, it would be by the implied discretion Newfound and Blake located in Rule 42. The court would have to reject the clear command of Rule 71.1, which is designed to handle condemnation cases efficiently. See Fed. R. Civ. P. 71.1 advisory committee's note. Because efficiency is also a purpose of Rule 42, see Fed. R. Civ. P. 42(b) ("expedite and economize"), ordering a jury here would be at odds with Blake, see 417 F.2d at 267 (affirming order of jury trial where it "fully effectuat[ed] the justifying purposes of Rule 42").

Read more broadly, Newfound and Blake's case-by-case approach may consider all relevant factors. The court identifies four here. First, there is the potential conflict of Federal Rules 42 and 71.1. Second, although the plaintiffs' legal claims seek damages, these legal claims are designed to stop Joliet from taking Evergreen Terrace. Cf. Levin v. ARDC of the Supreme Court of Ill., 74 F.3d 763, 767 n.4 (7th Cir. 1996) (construing damages claim as "merely another way to contest" equitable action of disbarment). Third, while civil rights issues presented in the legal actions mirror the defenses in the condemnation action, the latter action is the more appropriate one for resolution of the civil rights issues. See Garry v. Geils, 82 F.3d 1362, 1364-69 (7th Cir. 1996); Ahrensfeld v. Stephens, 528 F.2d 193, 198-99 (7th Cir. 1975); Blankner v. City of Chi., 504 F.2d

13

1037, 1042 (7th Cir. 1974); Green Street v. Daley, 373 F.2d 1, 6-7 (7th Cir. 1967). The foregoing Seventh Circuit cases concerned federal challenges to state condemnations. While Garry relied on Rooker-Feldman, the other three held that challenges to condemnation belong in the condemnation proceeding. The difference between those cases and the cases before this court is that the condemnation here is in federal court, not state court. Nothing persuades the court that federal challenges to the condemnation action should not be decided in the condemnation action simply because it traveled from state to federal court. Resolution of the federal issues in the condemnation suit is what authority suggests. And, fourth, it is what the Seventh Circuit explicitly instructs.

## CONCLUSION

Under Beacon Theatres and its progeny, plaintiffs have no jury right in a separate condemnation action. Under the line of cases concerning Rule 42 consolidation giving rise to the availability of a jury, the slim rationales and divergent facts in Newfound, Blake, and Nordbrock are not persuasive. Absent clear and robust authority, this court will not exercise implied discretion under Rule 42 to afford a jury trial that would override both Rule 71.1 and instructions from the Seventh Circuit, before which was the obvious fact of multiple lawsuits, one equitable and others legal. Further, the cases make clear that federal civil rights challenges to condemnation actions should be resolved in the condemnation action itself. The court therefore finds the condemnation action along with the affirmative defenses must be tried separately to the bench and that the plaintiffs have no Seventh Amendment jury trial right in the condemnation action. The court also declines to find discretion under Rule 42 to order a jury trial. Because the Seventh Circuit's instruction to resolve the condemnation action first does not intrude on the plaintiffs' Seventh Amendment rights, the court proceeds accordingly. Joliet's motions

to stay the cases brought by New West, the Tenants, and the United States pending the outcome of the condemnation action are granted. A bench trial on the condemnation action brought by Joliet will take place on December 11, 2012.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 1-31-12